NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
TRAVIS MIDDLEBROOKS,                    :
                                        :    Civil Action No. 08-6291 (WJM)
        Plaintiff,                      :
                                        :
    v.                                  :
                                        :
OFFICER ARAMIS ALBA,                    :
                                        :    **MEMORANDUM OPINION**
        Defendant.                      :
_____:

**Martini**, District Judge:

      This matter is before the Court upon Defendant's motion for summary judgment.  See Docket Entry No. 43.  For the reasons expressed below, Defendant's motion will be granted, and the entirety of Plaintiff's challenges will be dismissed.

**I.    BACKGROUND**

      Plaintiff initiated the instant matter by submitting a complaint ("Complaint") dated as of December 5, 2008.  See Docket Entry No. 1, at 7.

a.    Plaintiff alleged – in the subsection requesting the information how Defendant was involved in this case – that, on the night of August 28, 2008, Plaintiff was riding his bicycle when Defendant, a police officer, hit Plaintiff's bicycle with Defendant's police car and then assaulted Plaintiff by "kicking" and "stomping" Plaintiff, hitting Plaintiff's against Defendant's car and "macing" Plaintiff.  See id. at 4.

b.    In the "Statement of Claims" section of his Complaint, Plaintiff reitereted that he was riding his bicycle when Defendant hit his bike with Defendant's car and then assaulted

        Plaintiff by "kicking," "stomping" and "macing" Plaintiff – all before Plaintiff was placed in Defendant's vehicle. See id. at 6.

c.    The Complaint did not specify any other circumstances surrounding Defendant's actions, it only noted that the alleged actions occurred on the night of Plaintiff's arrest and before Plaintiff's placement in Defendant's vehicle. See generally, Docket Entry No. 1. In other words, Plaintiff's Complaint left open the possibility that Defendant hit Plaintiff's bicycle for no reason at all, simply with the goal to simply knock Plaintiff down to the ground and to sadistically beat, kick and "mace" Plaintiff who was presented as a non-resisting victim of Defendant's senseless rage. See id.

At the time when the Court was screening Plaintiff's pleading, the United States Supreme Court was yet to issue its pivotal standard-of-review case, Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Thus, this Court relied on Erickson v. Pardus, 551 U.S. 89 (2007), in order to screen Plaintiff's pleadings under the prior standard-of-review test set forth in Conley v. Gibson, 355 U.S. 41 (1957), pursuant to which "a complaint [could not have been] dismissed for failure to state a claim unless it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim."[1] Applying this test, the Court directed service upon Defendant.

Two years passed by, and the discovery in this matter was completed. See Docket Entries Nos. 2-42 (tracing the developments from service of process to completion of discovery).

On March 31, 2011, Defendant moved for summary judgment; Plaintiff failed to oppose

---

[1] In Iqbal, the Supreme Court conclusively archived the Conley v. Gibson standard of review and clarified that the standard of review set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), should apply to civil rights claims of all litigants, including confined individuals proceeding pro se.

Defendant's motion. See Docket Entry No. 43 and docket, generally. In his motion and attached declarations and exhibits, Defendant asserted numerous facts filling in the gaps left by Plaintiff's challenges. Specifically, Defendant's submissions show that:

a.  On August 28, 2008, the City of Paterson police department received a call informing the police that two perpetrators had just robbed three victims at gunpoint; the caller provided detailed descriptions of the perpetrators and indicated, inter alia, that one of them was a dark-skinned male dressed in red jacket, white tee-shirt and blue jeans (that description was fitting Plaintiff's description), and that this perpetrator was armed and traveled on a green mountain bicycle within the vicinity of the Market Street.[2]

b.  Officer Picardo conveyed this information to Paterson patrolmen units, including to Defendant who was among the officers performing patrol duties during that evening. When Defendant spotted Plaintiff (who was dressed in the outfit described by the victims and, indeed, was traveling on his green mountain bike), a pursuit resulted, at the end of which Defendant observed that Plaintiff had his hand in his pocket as if he was holding on to a gun.[3]  When Defendant caught up with Plaintiff, a violent struggle ensued when Defendant tried to arrest Plaintiff and restrain him by placing him in handcuffs. During the struggle, Plaintiff kicked Defendant in the chest and stomach several times, necessitating Defendant's use of the "pepper spray" in order to subdue Plaintiff's massive

---

[2]  The other perpetrator, also identified by the outfit he wore, turned out to be a certain Jermaine Chandler. Chandler, who already had extensive criminal history, was charged with theft in connection with the events at issue; he is currently serving five-year sentence based on this offence. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1424634&n=0>>.

[3]  After Plaintiff's arrest, it was established that Plaintiff indeed had a loaded revolver in his pocket.

resistance.[4]

c. Plaintiff, who – on that evening – was identified by the victims as one of the perpetrators, was later charged with unlawful possession of firearm, aggravated assault on a police officer and resisting arrest. On February 26,2009, following a plea agreement, Plaintiff pled guilty to unlawful possession of weapon, while the allegations of aggravated assault on a police officer and resistence to arrested were voluntarily dismissed as part of the plea deal. Plaintiff is now serving five-year prison term. During the sentencing stage of Plaintiff's criminal proceedings, the sentencing judge observed that, while – pursuant to the plea agreement reached between Plaintiff and the State – the charges were boiled down solely to Plaintiff's "possession [of a firearm] for an unlawful purpose, . . . it appear[ed] that the circumstances [surrounding Plaintiff's offence] were . . . more serious."  Correspondingly, Plaintiff's minimum term of imprisonment was set at 3 years.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment will not be denied based on

---

[4] At the time of Plaintiff's entry into custody of the New Jersey Department of Correction (that is, nine months after the offense), Plaintiff was 6'3" in height and was weighing 293 pounds. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1348402&n=0>>.

mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  See Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).

The Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (emphasis removed, internal citations omitted).  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

However, the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  See Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54

F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). However, failure to oppose the motion cannot mean that the Court may consider facts asserted by the moving party "undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2); see also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

### III.   SUBSTANTIVE INQUIRIES

####    A.   Excessive Force Test

A claim of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 388 (1989). The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. To prevail on their Fourth Amendment claim, Plaintiffs must show that a seizure occurred, and that it was unreasonable under the circumstances. See Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989).

While the use of excessive force can indeed constitute an unlawful "seizure" under the Fourth Amendment, when construing an excessive force claim, this Court must consider whether the officer's use of force was objectively reasonable under the circumstances, regardless of the official's underlying motive or intentions. See Graham, 490 U.S. at 395-97. In Graham, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396; see also Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (quoting Kopec v. Tate, 361 F.3d 772, 777 (3d Cir.) (finding an officer entitled to qualified immunity on excessive force claim "'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances'"), cert. denied, 543 U.S. 956 (2004). In addition, the Court of Appeals has noted other relevant factors including, inter alia, "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997) (abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)); see also Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

> When weighing these factors, courts should evaluate the officer's conduct from the officer's vantage point at the time of the incident; thus the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (internal quotations and citations omitted).

The Court of Appeals recently examined the reasonableness of an excessive force claim in the context of the use of deadly force. See Lamont v. New Jersey, 637 F.3d 177 (3d Cir. 2011). Even in such circumstances, the Court of Appeals reminded that "'[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene'; Monday morning quarterbacking is not allowed." Id. at 183 (citations omitted).

B.  **Qualified Immunity Aspect**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 191 (3d Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223 (2009)).  More simply stated, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  This defense strikes a balance, shielding those officers from liability that mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights.  See Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).

> The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Groh v. Ramirez, 540 U.S. 551, 567 2004) (Kennedy, J., dissenting) (citing Butz v. Economou, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

Pearson, 129 S. Ct. at 815.

In assessing whether qualified immunity applies, courts consider two inquiries: (a) whether the facts, when viewed in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (b) whether the right that was allegedly violated was clearly established, i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  The Supreme Court made clear in Pearson that courts have discretion to determine

which of the two prongs of the qualified immunity test to address first.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010) (noting the elimination of "the requirement that Saucier's two steps be analyzed in sequential order").  "If the answer to either question is 'no,' the analysis may end there."  Matos v. City of Camden, 2009 U.S. Dist. LEXIS 21675 (D.N.J. Mar. 18, 2009) (citing Pearson, 129 S. Ct. at 823).

## IV. DISCUSSION

### A. Defendant's Legal Position

Here, Defendant maintains that he is entitled to qualified immunity and good faith immunity,[5] that Plaintiff's challenges are barred because they present a collateral attack on Plaintiff's conviction, that Plaintiff's state tort claim shall be dismissed for failure to file a notice and, finally, that Plaintiff failed to state a prima facie case.[6]  While the logic of Defendant's legal positions is, occasionally, unclear to this Court, Defendant is correct in his overall conclusion that he is entitled to summary judgment in his favor.

### B. Defendant's Facially Erroneous Arguments

#### 1. *Heck* Bar Is Inapplicable to the Instant Matter

As noted supra, Defendant argues that Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held, inter alia, that in order for a plaintiff to

---

[5] New Jersey courts define "good faith" in the context of N.J. Stat. Ann. § 59:3-3 to mean objectively reasonable conduct.  See Fielder v. Stonack, 141 N.J. 101, 661 A.2d 231, 246 (N.J. 1995).  Here, however, Plaintiff asserted no state law claims.

[6] The best this Court can surmise, Defendant's "prima facie case" argument is, effectively, the argument that Plaintiff's Fourth Amendment rights were not violated because Defendant's force was not excessive under the circumstances.

> recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87.

Thus, the essential inquiry is whether the claims asserted by Plaintiff would "necessarily imply the invalidity of his conviction." Wallace v. Kato, 549 U.S. 384, 398 (2007) (Stevens, J., concurring) (quoting Heck, 512 U.S. at 486-87).

Here, it is undisputed that Plaintiff was convicted of unlawful possession of a firearm. However, the charges of resisting arrest and assault on an officer were voluntarily dismissed as part of Plaintiff's plea agreement. Plaintiff's conviction based on unlawful possession cannot be invalidated even if Plaintiff would, hypothetically, prevail on his excessive force claim, since such favorable-to-Plaintiff determination would not impugn upon the validity of his conviction. Correspondingly, Defendant is not entitled to summary judgment based on the Heck bar.

### 2. The Issue of Tort Notice Is Inapposite to the Instant Matter

In addition to his Heck-based argument, Defendant asserts that Plaintiff's "hypothetical" state tort claim should be barred by Plaintiff's failure to file a timely notice. The Court, however, will not infer state law claims where none appear to have been plead.[7]

---

[7] Moreover, even if Plaintiff had asserted claims based upon New Jersey State law, the Court would decline extending supplemental jurisdiction over them, having dismissing all federal claims. See Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999); 28 U.S.C. § 1367(c)(3).

    **B.**    <u>Defendant's Conclusions Having Substantive Merit</u>

The foregoing leaves this Court only with two Defendant's contentions, <u>i.e.</u>, that Defendant either did not violate Plaintiff's Fourth Amendment rights or that Defendant is entitled to qualified immunity.

    **1.**    **Defendant's Actions That Did Not Violate Plaintiff's Rights**

Here, the Court is presented with a peculiar situation where Plaintiff asserted selective facts (largely undisputed by Defendant) while omitting any statement with regard to the remaining circumstances. Once the factual gaps left by Plaintiff were filled with evidence proffered by Defendant[8] and left unaddressed by Plaintiff (<u>i.e.</u>, uncontradicted by Plaintiff's allegations stated in the Complaint and, in addition, unchallenged by Plaintiff for the purposes of Defendant's motion), the parties' positions yielded two sides of the same coin.[9]

Therefore, the Court pieces together a picture where Plaintiff, identified as an armed perpetrator fleeing the crime scene, engaged in an altercation with Defendant who was trying to subdue Plaintiff in order to place him under arrest. During this altercation, Plaintiff – having formidable 6'3" height and carrying almost 300 pounds of weight – physically resisted Defendant's efforts by kicking Defendant in chest and stomach. In response, Defendant kicked

---

    [8] The declaration attached to Defendant's motion is considered as evidence of what Defendant could testify to at trial, and Defendant's police report is assessed as a Rule 803(8) public record. See <u>United States v. Versaint</u>, 849 F.2d 827, 831 (3d Cir. 1988).

    [9] The sole exception to this observation is limited to Defendant's factual evidence and Plaintiff's pled-in-the-Complaint factual assertion that Defendant knocked Plaintiff off Plaintiff's mountain bike by hitting the bike with Defendant's car: according to Defendant's evidence, Defendant' car merely blocked Plaintiff's path hence forcing Plaintiff off the bike. This discrepancy between Plaintiff's assertions and Defendant's evidence is addressed in the next subsection of this Memorandum Opinion.

Plaintiff and hit him against Defendant's car and, when these measures failed to succeed, utilized the "pepper spray." Plaintiff's assertions and Defendant's evidence identically state this all aforesaid Defendant's actions took place prior to Plaintiff's being subdued and handcuffed, and prior to Plaintiff's placement in Defendant's car and under arrest.

Since it is undisputed that: (a) Defendant was aware of Plaintiff's possession of firearm; (b) Defendant had knowledge that Plaintiff had just been involved in an at-gunpoint robbery; (c) Plaintiff was fleeing the crime scene on a mountain bike and was likely to evade justice if not immediately apprehended; (d) Plaintiff engaged in active and violent physical resistance to Defendant's attempts to subdue and handcuff Plaintiff; (e) Plaintiff presented a substantial danger to Defendant and the society at large; and (f) Defendant's physical actions against Plaintiff were short-termed and took place entirely prior to Plaintiff's being subdued, the range of physical force used by Defendant against Plaintiff and Defendant's utilization of his "pepper spray" were objectively reasonable if assessed from the vantage point of a reasonable officer on the scene. Consequently, Defendant did not violate Plaintiff's Fourth Amendment rights by engaging in all Defendant's actions other than the alleged-by-Plaintiff Defendant's act of knocking Plaintiff off his bike with Defendant's police vehicle.

### 2. Defendant's Actions Entitled to Qualified Immunity

Here, Defendant offered public record in the form of his police report asserting that Plaintiff's flight on his bike was merely blocked by Defendant, who stopped his car blocking Plaintiff's path and presented Plaintiff with Defendant's police badge. Since Plaintiff did not present any evidence to the contrary, his mere "pleadings are insufficient to repel summary judgment." Schoch, 912 F.2d at 657 (3d Cir. 1990). That being said, the difference between

Plaintiff assertions and Defendant's evidence cannot be ignored for the purposes of this Court's summary judgment analysis, since Plaintiff's alleged in his Complaint that Defendant hit Plaintiff's bicycle with Defendant's vehicle (rather than merely blocking Plaintiff's path).

However, Defendant is entitled to qualified immunity even if the Court were to adopt Plaintiff's assertion as the true version of the events. It is self-evident that the injury, if any, suffered by Plaintiff's mountain bicycle has no relevance to the Court's analysis. This is so because Plaintiff failed to allege any injury to property in his Complaint and also because the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government. See Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J.1998), aff'd, 186 F.3d 407 (3d Cir. 1999). Therefore, any deprivation of property claim that might have been asserted by Plaintiff would be subject to dismissal with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Correspondingly, the sole issue is whether a police officer' action of knocking a suspected armed perpetrator off the perpetrator's bicycle amounts to an unlawful conduct that a reasonable officer would be aware of. See Saucier, 533 U.S. at 201-02. Relevantly here, case law indicates that a driving police officer's physical action knocking down a bicycling suspect fleeing the crime scene warrants qualified immunity. See Boone v. City of Elizabeth, 2009 U.S. Dist. LEXIS 76163 (D.N.J. Aug. 25, 2009) (granting summary judgment in similar circumstances while denying summary judgment in other respects); Vasquez v. City of Jersey City, 2006 U.S. Dist. LEXIS 72135 (D.N.J. Mar. 30, 2006) (same). Therefore, even if the Court were to adopt, as the true version of the events, Plaintiff's assertion that Defendant his Plaintiff's bicycle with

Defendant's car and, thus, knocked Plaintiff off his bicycle to the ground (instead of merely causing Plaintiff off the bike by blocking Plaintiff's path), Defendant would still be entitled to qualified immunity on this narrow issue.[10]

## V.     CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment and dismiss Plaintiff's Complaint.

An appropriate Order accompanied this Memorandum Opinion.

s/William J. Martini

**William J. Martini**
**United States District Judge**

Dated: 8/18/11

---

[10] Serious physical injury is not a necessary prerequisite to an excessive force claim. See Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Here, however, Plaintiff did not assert in his Complaint any facts suggesting that Plaintiff sustained *any* injuries during his physical altercation with Defendant or as a result of Defendant's alleged hitting of Plaintiff's bicycle with Defendant's car. This aspect is important: the Court stresses that its determinations would likely be different had there been evidence proffered by Plaintiff (or at least Plaintiff's allegations) indicating that Defendant caused Plaintiff injury with Defendant's car. Indeed, a police officer cannot be entitled to qualified immunity if the officer then runs over the suspect with his car or commits an analogous act laden with the danger of physical injury to the suspect. The Court, therefore, stresses that its legal findings are limited to the particular circumstances at bar.